UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN FLANAGAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Misc. Action No. 05-00005 (RCL) |
| ) | |
| WYNDHAM INTERNATIONAL INC., et al., ) | |
| ) | |
| Defendants, ) | |
| and ) | |
| ) | |
| BRIAN JAMES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WYNDHAM INTERNATIONAL INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Non-Party S.G.'s Motion [1] to Quash Subpoena Duces Tecum Served December 22, 2004 and for a Protective Order, Wyndham Defendants' Motion [14] for Leave to File Sur-Reply, and Non-Party S.G.'s Motion [17] for Notice of Supplemental Authority. The underlying Flanagan and James actions are currently pending in the United States District Court of the Virgin Islands; this Court has ancillary jurisdiction over matters related to the abovementioned motions only. S.G. alleges that she does not possess relevant and non-duplicative information about the Flanagan and James cases and that the

1

deposition requested by the Wyndham Defendants[1] would unduly burden and harass her.  Upon consideration of the parties' filings, the applicable law, and the record herein, Wyndham Defendants' Motion for Leave to File Sur-Reply is granted, Non-Party S.G.'s Motion for Notice of Supplemental Authority is granted, and non-party S.G.'s motion to quash is denied in accordance with this memorandum opinion.

## I. BACKGROUND

In December 2000, Flora Nicholas and Paul Gayter filed suit in the United States District Court of the Virgin Islands on behalf of their minor daughter S.G. against the Wyndham Defendants and its employee Bryan Hornby.  Nicholas, et al. v. Wyndham Int'l, Inc., et al., Civil No. 2001/147-M/R.  Hornby worked at the Kids Klub day-care program at the Wyndham Sugar Bay Resort in St. Thomas.  The suit sought damages arising out of Hornby's alleged sexual molestation of S.G. while she was under his care.  After the initiation of the civil suit, Hornby was convicted of sexually molesting S.G. and is currently incarcerated in the Virgin Islands.  The Wyndham Defendants conducted a deposition of S.G. in Nicholas on September 30, 2002, and the parties have since completed discovery and are now awaiting trial.  Since filing suit against the Wyndham Defendants, the Gayters have attempted to contact other families whose children had contact with Hornby while he was employed at the Kids Klub.  To that end, S.G.'s parents have granted several media interviews, and have allowed local and national news outlets to interview S.G.

---

[1] Defendants Wyndham International, Inc., Wyndham Management Corp., Sugar Bay Club and Resort Corp., and Rik Blyth.

Approximately two years after <u>Nicholas</u> was filed, the plaintiffs in the two underlying actions, <u>Flanagan</u> and <u>James</u>, filed similar suits against the Wyndham Defendants and Hornby. These two actions were filed in the U.S. District Court of the Virgin Islands, which consolidated them for discovery purposes. The plaintiffs in <u>Flanagan</u> and <u>James</u> allege that Hornby sexually molested the 9-year old Flanagan girl and the 8-year old James girl while they attended the Wyndham Kids Klub. The Gayters' visit to Wyndham Sugar Bay overlapped with the Flanagan family's visit and preceded the James family's visit by two weeks. The <u>Flanagan</u> and <u>James</u> complaints make virtually identical references to the Gayters' visit to Wyndham Sugar Bay Resort; the Initial Disclosures in both <u>Flanagan</u> and <u>James</u> refer to S.G. and her parents as individuals who "have and/or are likely to have" discoverable information which the plaintiffs may potentially use. Pl.'s Initial Disclosure Pursuant to Rule 26(a)(1), Civil No. 2002/237 - M/R, at 2-4; Pl.'s Initial Disclosure Pursuant to Rule 26(a)(1), Civil No. 2002/155 - M/R, at 2-4. The plaintiffs' causes of action against the Wyndham Defendants include negligent hiring and retention, negligent supervision, and respondeat superior, among others.

On July 22, 2004, the Wyndham Defendants filed a motion in the U.S. District Court of the Virgin Islands requesting an order compelling the discovery of relevant information from S.G. and her parents. On October 12, 2004, over the <u>James</u> and <u>Flanagan</u> plaintiffs' opposition, the court allowed the Wyndham Defendants to notice the depositions of S.G. and her parents (by way of a third-party subpoena from S.G.'s local district court), but set several conditions on any such depositions. The court ordered that

> The scope of any depositions of Flora Nichols, Paul Gayter, and/or S.G. [be] **limited** to the said witnesses' knowledge and information regarding the [<u>Flanagan</u> and <u>James</u>] cases only. Moreover, any questioning or attempts to obtain information that correlates to, is duplicative of, or otherwise parallels the testimony given in any previous deposition(s) is not permitted.

3

Order Regarding Wyndham Defendants' Mot. Compel Disc. (Cannon, Mag. J.) ("Order to Compel") at 6-7.  On December 22, 2004, the Wyndham Defendants served subpoenas on S.G. and her parents commanding them to appear for depositions in their attorney's District of Columbia office on January 10, 2005.  S.G.'s counsel in turn informed the Wyndham Defendants that S.G. possessed no information about the Flanagan or James cases other than what she testified to in the depositions and at trial in Nicholas.  The Wyndham Defendants did not agree to withdraw the subpoena and on January 4, 2005, S.G. filed Non-Party S.G.'s Motion to Quash Subpoena Duces Tecum Served December 22, 2004 and for a Protective Order ("Mot. Quash").  The Motion to Quash alleged that S.G. possessed no information relevant to the Flanagan and James actions and that a deposition in this case would subject her to an undue burden.  The motion included a signed declaration by S.G. asserting that she had never met or communicated with the Flanagan family except for attending the Wyndham Kids Klub at the same time as the Flanagans' daughter, which she testified about in Nicholas, and furthermore that she had no personal knowledge of the allegations in Flanagan and James.  On January 10, 2005, the Wyndham Defendants deposed S.G.'s parents but S.G. did not appear.  The Wyndham Defendants continue to seek to depose S.G. about her knowledge relevant to the Flanagan and James actions.

## II. ANALYSIS

*A. Wyndham Defendants' Motion for Leave to File Sur-Reply*

The Wyndham Defendants filed a motion for leave to file a sur-reply to S.G.'s reply to their opposition to S.G.'s Motion to Quash.  The grounds for this motion are that the reply filed by S.G. included a signed declaration by S.G. not included in the original Motion to Quash.  A

sur-reply may only be filed by leave of court, and only "to address new matters raised in a reply, to which a party would otherwise be unable to respond." United States v. Baroid Corp., 346 F.Supp.2d 138, 143 (D.D.C. 2004) (Lamberth, J.) (quoting United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., 238 F.Supp.2d 270, 276-77 (D.D.C. 2002)). A district court "routinely grants such motions when a party is unable to contest matters presented to the court for the first time in the last scheduled pleading." Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)); see also Alexander v. F.B.I., 186 F.R.D. 71, 74 (D.D.C. 1998) (Lamberth, J.) (granting motion for leave to file sur-reply, where other party's reply included a declaration not included in its original motion). Through their sur-reply, the Wyndham Defendants seek an opportunity to refute the statements made by S.G. in her supplemental declaration. Were this Court to deny the Wyndham Defendants leave to file a sur-reply, the Wyndham Defendants would be unable to contest matters presented to the court for the first time in the form of S.G.'s supplemental declaration. Hence, it is the conclusion of this Court that the Wyndham Defendants have demonstrated good cause for the Court to grant this motion. The Wyndham Defendants' motion for leave to file sur-reply is granted and their sur-reply will be filed.

*B. S.G.'s Motion for Notice of Supplemental Authority*

Non-party S.G. filed a Motion for Notice of Supplemental Authority to bring to this Court's attention an order entered by the U.S. District Court of the Virgin Islands in this case on February 17, 2005. That order stayed the Wyndham Defendants' motion for sanctions in the underlying discovery dispute pending the present ruling of this Court. Non-party S.G.'s motion

for notice of supplemental authority is granted and this Court will take note of the February 17 order.

*C. S.G.'s Motion to Quash and for a Protective Order*

   *1. Legal Standard for Limiting Scope of Discovery*

A party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... [or which] appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Consequently, "[a] party is entitled to depose a witness on all relevant issues as to which the witness has knowledge." CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984).  However, the court must limit discovery if "discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2).  Rule 26 also provides that "for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  As the moving party, S.G. bears the burden of showing "good cause" contemplated by this rule.  Alexander, 186 F.R.D. at 75; Ahern, 102 F.R.D. at 822.  S.G. may not, however, simply allege a broad need for a protective order so as to avoid general harm, but must demonstrate specific facts which would justify such an order.  See Anderson v. Cryovac, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."); Alexander, 186 F.R.D. at 75 ("[The movant] must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."); Id. ("[T]he moving party has a heavy burden of showing

6

'extraordinary circumstances' based on 'specific facts' that would justify such an order.") (quoting Prozina Shipping Co., Ltd. v. Thirty-Four Auto., 179 F.R.D. 41, 48 (D. Mass. 1988)).

In addition to rights conferred by Rule 26, Rule 45 provides that a subpoena for relevant information may be quashed or modified if it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). As the party seeking to quash a subpoena, S.G. bears the burden of showing that it subjects her to undue burden. Westinghouse Elec. Corp. v. City of Burlington, 351 F.2d 762, 766 (D.C. Cir. 1965); see also Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (interpreting "undue burden" as a request that is "unreasonable[] or oppressi[ve]" in the context of all the circumstances of the case). The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances. Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979); Rolscreen Co. v. Pella Prod. of St. Louis, Inc., 145 F.R.D. 92, 96 (S.D. Iowa 1992) ("Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances."); Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."). A court should be loathe to quash a subpoena if other protection of less absolute character is possible. See Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("When a court is confronted with a motion to quash, its duty is not to deny discovery altogether, but to reduce the demand to a reasonable level, considering the parties' concerns."); Northrop Corp., 751 F.2d at 403 (noting that a court should refrain from quashing a subpoena if undue burden can be avoided through modification). Consequently, the movant's burden is greater for a motion to quash than if she were seeking more limited protection. Westinghouse Elec. Corp., 351 F.2d at 766.

In accordance with these considerations, courts generally employ a balancing test, weighing the burdensomeness to the moving party against the deponent's need for, and the relevance of, the information being sought.  See Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547, (11th Cir. 1985); Insulate Am. v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005); Wyoming v. U.S. Dep't. of Agric., 208 F.R.D. 449, 452-53 (D.D.C. 2002); Alexander, 186 F.R.D. at 75.  In this case, the balancing of the various factors is made more difficult by the fact that the underlying actions are being litigated in the District of the Virgin Islands.  A court with jurisdiction over a discovery dispute for an action pending in a different district generally has limited exposure to and understanding of the primary action.  Heat & Control, Inc, 785 F.2d at 1024; Anker v. G.D. Searle & Co., 126 F.R.D. 515, 518 (M.D.N.C. 1989).   A court in such a situation should hence be cautious in determining relevance of evidence, and in case of doubt should err on the side of permissive discovery.  Heat & Control, Inc, 785 F.2d at 1024; Anker, 126 F.R.D. at 518.  Additionally, this Court has previously expressed its preference that a deposition proceed and the deponent assert her objections during the deposition, thus allowing the deposing party to "develop circumstantial facts in order to explore the propriety of the ... objection."  Kaiser v. Mutual Life Ins. Co. of N.Y., 161 F.R.D. 378, 380 (S.D. Ind. 1994), quoted in Alexander v. F.B.I., 186 F.R.D. 78, 97 (D.D.C. 1998) (Lamberth, J.); see also 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2037, at 495 (2d ed. 1994) (explaining that as a preferred alternative to an order that discovery not be had, the moving party can usually be adequately protected by making a Rule 30(d) motion during the course of the deposition).

    2. *Relevance of Testimony Sought by the Wyndham Defendants*

S.G.'s motion correctly states that this Court must balance the Wyndham Defendant's need for the requested discovery against the burden upon S.G.  Mot. Quash 9 (citing <u>Flanagan v. Wyndham Int'l</u>, Misc. A. No. 04-0415 PLF, Mem. Order at 5; <u>Wyoming</u>, 208 F.R.D. at 452-53).  S.G. is also correct in noting that as part of this balancing test, this Court should consider the relevance of the information sought by the Wyndham Defendants.  Mot. Quash 9.  Indeed, S.G. devotes much of the motion to assertions that she has no knowledge or information relevant to the <u>Flanagan</u> and <u>James</u> actions other than her past testimony in the <u>Nicholas</u> action.  <u>See</u> Mot. Quash <u>passim</u>.  However, S.G.'s primary reliance on the relevance prong of this Court's inquiry is misplaced.

In the Order to Compel, the U.S. District Court for the Virgin Islands made a determination that S.G.'s and her parents' testimony is relevant to the <u>Flanagan</u> and <u>James</u> actions.  The court had an opportunity to analyze the filings submitted by each party, and after considering applicable law, the court concluded that "the testimony of witnesses identified by Plaintiffs [including S.G. and her parents] is relevant as contemplated by the [Federal Rules of Civil Procedure]."  Order to Compel 3-4.  As explained above, the U.S. District Court of the Virgin Islands is in a better position to evaluate the question of relevance because of its familiarity with the underlying <u>Flanagan</u> and <u>James</u> actions.  <u>See</u> <u>Heat & Control, Inc</u>, 785 F.2d at 1024 (observing that courts with jurisdictions over discovery matters have less familiarity with the main action than the primary courts and should be permissive in determining relevance under Rule 26(b)(1)); <u>Anker</u>, 126 F.R.D. at 518 (suggesting that a court where the case is litigated has a more complete understanding of the matters involved and the relevance of information than a court which has jurisdiction only over related discovery motions).  Although the "law of the case" doctrine is not dispositive of S.G.'s motion (contrary to the Wyndham Defendants'

proposition), it does support this Court's decision to rely on the relevance analysis performed by the U.S. District Court of the Virgin Islands.[2]  Mem. Opp. Non-Party S.G.'s Mot. Quash 8. Accordingly, this Court gives deference to the U.S. District Court of the Virgin Islands and agrees with the determination made in the Order to Compel that S.G.'s testimony is relevant to the Flanagan and James actions.

S.G. does not deny that she may have met, spoken to, or otherwise communicated with members of the Flanagan family during their overlapping visit to the Wyndham Sugar Bay Resort and specifically during their daughter's visits to the Kids Klub.  See, e.g., Mot. Quash 3 (noting that S.G. briefly interacted with the Flanagans' daughter at the hotel); id. at 4-5 (quoting S.G.'s earlier testimony about seeing the Flanagans' daughter at some Kids Klub events); id., Ex. 2 (asserting that any meetings or communications with the Flanagans which may have taken place were encompassed in S.G.'s Nicholas testimony).  Indeed, in her reply to the Wyndham Defendants' opposition, S.G. freely concedes that she has information relevant to the Flanagan and James actions, but argues that it has been disclosed in her previous testimony.  Non-Party S.G.'s Reply Supp. Mot. Quash Subpoena Ducem Tecum Served Dec. 22, 2004 and for a Protective Order ("Reply Supp. Mot.") 3.  In accordance with Rule 26, S.G.'s claims that the

---

[2] The doctrine of the law of the case is most often invoked when a case is transferred to a different court, but its principles are applicable in the present situation.  "[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (citations omitted).  This doctrine applies with equal force to decisions of a coordinate court in the same proceeding.  Id. at 816.  While the doctrine of the law of the case is no more than a guiding principle and does not diminish this Court's discretion to revisit prior decisions of a coordinate court, it "expresses the practice of courts generally to refuse to reopen what has been decided."  Id. at 817 (citing Messinger v. Anderson, 225 U.S. 436, 444 (1912)).

deposition will elicit duplicative information are not a factor in determining relevance of her knowledge but can only be used to support her showing of burden.  Relevance is defined broadly in accordance with Rule 26(b)(1), whereas a determination of whether discovery is duplicative is incorporated into Rule 26(b)(2), which sets limitations on scope of discovery.  In the context of Rule 26, the above considerations establish the sufficient showing of relevance needed to permit the Wyndham Defendants to depose S.G. in this case.

### 3. The Potential for Subjecting S.G. to Undue Burden

Having established relevance, this Court now turns to S.G.'s claims that the deposition sought by the Wyndham Defendants would impose an undue burden on S.G.  Mot. Quash 9, 10.  As noted above, Federal Rules of Civil Procedure 26 and 45 prescribe the grounds for quashing a subpoena or limiting scope of discovery, including requests that are unreasonably cumulative or duplicative, or expose a person to annoyance, embarrassment, oppression, or undue burden.  Fed. R. Civ. P. 26(b)(2), 26(c), 45(c)(3)(A)(iv).  While admitting that she has information relevant to the Flanagan and James actions, S.G. chiefly bases her "undue burden" argument on assertions that any relevant knowledge she does possess is duplicative of her previous testimony in Nicholas.  Reply Supp. Mot. 3.

#### a. Discovery Sought by the Wyndham Defendants Is Not Unreasonably Duplicative

S.G.'s main premise is that her testimony and depositions in Nicholas revealed all she knows about this case and that her signed declarations and motions put this question to rest.  Mot. Quash 6.  This Court has previously explained some of the shortcomings of written declarations as compared to live testimony in that "such an approach eschews the opportunity for

11

opposing counsel to probe the veracity and contours of the statements and denie[s] the opportunity to ask probative follow-up questions." Alexander v. F.B.I., 186 F.R.D. 113, 121 (D.D.C. 1998) (Lamberth, J.) (citations omitted).  The Court went on to explain:

> Deposition testimony "permits examination and cross-examination of a live witness by counsel, where there is no opportunity to reflect and carefully shape the information given."  Unilaterally deciding when to answer deposition questions does not comport with these principles, and any such practice will be stopped immediately, except as provided for under the Federal Rules of Civil Procedure.

Id. at 121-22 (emphasis added) (quoting CHARLES ALAN WRIGHT & MARY KAY KANE, LAW OF FEDERAL COURTS § 84, at 613 (6th ed. 2002)); see also Amherst Leasing Corp. v. Emhart Corp, 65 F.R.D. 121, 122 (D. Conn. 1974) ("[T]he general rule is that a claimed lack of knowledge does not provide sufficient grounds for a protective order; the other side is allowed to test this claim by deposing the witness."); Parkhurst v. Kling, 266 F.Supp. 780, 781 (E.D. Pa. 1967) ("If the 'good cause' requirement could be thus simply met by an ex parte affidavit that the affiant had no relevant knowledge of the subject matter of the action the salutary purpose of Rule 26, providing for unlimited discovery would be easily and unjustifiably frustrated.").

In this case, the Wyndham Defendants' focus is inherently divergent from their line of inquiry in Nicholas.  The Nicholas depositions took place before the Flanagan and James actions were initiated and the Wyndham Defendants were not seeking information specific to these plaintiffs and these cases.  Assuming S.G. disclosed in her Nicholas testimony what she thought were all the facts relevant to Flanagan and James, the Wyndham Defendants may still be able to elicit additional relevant information due to the new focus of their inquiry.  The U.S. District Court of the Virgin Islands considered this argument and found that a limitation on the scope of deposition was a better solution than an outright prohibition of it.  The court stated:

> [E]ven though the Gayters have already been deposed, such depositions were taken in a

>separate lawsuit (wherein they are the named parties), prior to the commencement of the above-captioned cases. Moreover, the Court finds that it can fashion limitations upon the taking of the depositions to allay any concerns of rehashing or impeaching the Gayters' previous deposition testimony. Therefore the Court will allow Wyndham Defendants to depose the Gayters.

Order to Compel 5. This Court adopts the limitations on discovery enunciated in the Order to Compel so as to prevent S.G. from giving the same testimony she has already provided. Considering all the circumstances, this Court concludes that the Wyndham Defendants' deposition of S.G. may bring to light information relevant to Flanagan or James, non-duplicative of S.G.'s previous testimony in Nicholas.

### b. S.G. Has Not Shown That the Deposition Will Cause Her Irreparable Harm

The Court has also explained above that a party's showing of "good cause" required to limit discovery must describe with specificity the potential harm the party is trying to avoid. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) ("Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice."); Anderson, 805 F.2d at 7 (requiring a "particular factual demonstration of potential harm"). S.G. has failed to present any evidence, or even any claim, of harm she will suffer by submitting to the Wyndham Defendants' proposed deposition. S.G. makes a general claim that as a minor she should not have to testify again about events surrounding Hornby's sexual molestation of her. Mot. Quash 10; Reply Supp. Mot. 4. S.G.'s argument is weakened by the fact that she has granted interviews to several media organizations, including being quoted in a PEOPLE magazine article in 2004. See Bill Hewitt et al., Trouble Comes to Paradise, PEOPLE, Jan. 12, 2004, at 133. Without independent evidence that S.G. will suffer psychological or other harm, S.G.'s conclusory statements are not sufficient for a total prohibition of the deposition. See Nicholas v. Sugar Bay Club & Resort Corp., No. Civ. 2001/147 MR, at *1-2 (D.V.I. May 24, 2002) (order regarding plaintiffs' motion

for a protective order) (resolving that a complete prohibition of discovery is inappropriate where plaintiffs claimed potential psychological damage but failed to present "credible medical evidence that [deponent] will be irreparably harmed by the deposition"). S.G. should undoubtedly be familiar with this proposition, as the abovementioned order denied a similar motion for a protective order filed by S.G. in her original lawsuit against the Wyndham Defendants. While this Court is sympathetic to S.G.'s situation, her arguments fail to rise to the level required by law.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that non-party S.G. has failed to meet her burden under Federal Rules of Civil Procedure 26 and 45 to prevent the Wyndham Defendants from deposing her. Accordingly, and for the reasons stated herein, Wyndham Defendants' Motion for Leave to File Sur-Reply is hereby granted, S.G.'s Motion for Notice of Supplemental Authority is hereby granted, and Non-Party S.G.'s Motion to Quash Subpoena Duces Tecum Served December 22, 2004 and for a Protective Order is hereby denied.

A separate order accompanies this Memorandum Opinion.

Signed by Royce C. Lamberth, United States District Judge, October 5, 2005.